IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| MATAN GOLDSTEIN, | ) | |
| | ) | |
| *Plaintiff*, | ) | CIVIL ACTION NO. 3:24-CV-00036-RSB |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNIVERSITY OF VIRGINIA et al., | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**<u>MEMORANDUM IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 5

LEGAL ARGUMENT ............................................................................................................ 6

   I.    Plaintiff's claims against Defendants SJP and FJP should be dismissed because Defendants' speech is protected under the First Amendment. ....................................................................7

   II.   Plaintiff lacks standing to bring his claims because he lacks concrete and particularized injuries...........................................................................................................................10

       A.  Plaintiff's alleged injuries are too abstract and unsubstantiated to possess the requisite degrees  of concreteness and particularity. ............................................................... 11

       B.  Plaintiff fails to demonstrate that Defendants SJP and FJP's conduct caused his alleged injuries…………………………………………………….…………………………12

       C.  Plaintiff fails to demonstrate a likelihood that a court ruling in his favor would remedy his alleged injuries. ...................................................................................................... 13

   III.  Plaintiff fails to plead sufficient facts alleging that Defendants FJP and SJP violated § 8.01-42.1 because he fails to demonstrate that Defendants acted with religious animosity or that the Defendants, themselves, engaged in the alleged conduct. ............................................................14

   IV.  Plaintiff fails to plead facts sufficient to state a negligence claim that is plausible on its face. ....17

   V.   Plaintiff fails to sufficiently plead facts to plausibly allege that Defendants engaged in gross negligence. ...................................................................................................................19

   VI.  Plaintiff fails to sufficiently plead facts demonstrating that Defendants engaged in intentional infliction of emotional distress against Plaintiff and that Plaintiff suffered emotional distress to a degree entitling him to relief.......................................................................................20

   VII.  Plaintiff fails to sufficiently plead facts entitling him to relief under §§ 1981 and 1988 because Plaintiff lacks rights in a contractual employment or independent contractor relationship with Defendants. .................................................................................................................22

       A.  Plaintiff fails to plead facts entitling him to relief under § 1981. ............................... 22

       B.  Plaintiff fails to plead facts entitling him to attorney's fees under § 1988. ............... 24

CONCLUSION.................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*ACA Fin. Guaranty Corp. v. City of Buena Vista, Va.*, 298 F.Supp.3d 834 (W.D. Va. 2018) .................. 5

*Almy v. Grisham*, 273 Va. 68 (2007) ........................................................................................... 20, 21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 6, 16

*Awad v. Fordham Univ.*, 139 N.Y.S.3d 154 (N.Y.A.D. 1 Dept. 2020) ........................................ 5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................. 6

*Bennett v. Spear*, 520 U.S. 154 (1997) ....................................................................................... 13

*Berry v. Target Corp.*, 214 F.Supp.3d 530 (E.D. Va. 2016) ....................................................... 15

*Blue Ridge Serv. of Va. v. Saxon Shoes, Inc.*, 271 Va. 206 (2006) ............................................ 17

*Carey v. Brown*, 447 U.S. 445 (1980) .......................................................................................... 7

*CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008) ............................................................... 23

*Clayton v. Nationwide Mut. Ins. Co.*, 260 F.Supp.3d 514, (D.S.C. 2017) .................................. 20

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327 (2020) ......................... 23

*Cowan v. Hospice Support Care, Inc.*, 268 Va. 482 (2004) ........................................................ 19

*Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006) ........................................................... 23

*Falcone v. Dickstein*, 92 F.4th 193 (9th Cir. 2024) .................................................................... 22

*Frazier v. Cooke*, No. 4:17-CV-54, 2017 WL 5560864 (E.D. Va. Nov. 17, 2017) ................... 15

*Gossett v. Jackson*, 249 Va. 549 (1995) ..................................................................................... 17

*Griffin v. Shively*, 227 Va. 317 (1984) ........................................................................................ 17

*Ice Cube Bldg., LLC v. Scottsdale Ins. Co.*, No. 3:17-CV-00973 (KAD), 2019 WL 4643609 (D. Conn. Apr. 8, 2019) ............................................................................................................................ 5

*Johnson v. Hugo's Skateway*, 949 F.2d 1338 (4th Cir. 1991) ................................................... 15

*Koffman v. Garnett*, 265 Va. 12 (2003) ..................................................................................... 19

*Koontz v. Watson*, 283 F.Supp.3d 1007 (D. Kan. 2018) ............................................................ 9

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................................. 10

*Lujan v. National Wildlife Federation*, 487 U.S. 871 (1990) .................................................... 11

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ............................................................. 7, 8

*Parents Involved in Cmty Schools v. Seattle Sch. Dist. No. 1*, 551 U.S. 701 (2007) ................. 11

*Perry v. Schwarzenegger*, 591 F.3d 1126 (9th Cir. 2010) .......................................................... 8

*Police Dep't of City of Chi. v. Mosley*, 408 U.S. 92 (1972) ....................................................... 9

*Robertson v. Sea Pines Real Estate Co.*, 679 F.3d 278 (4th Cir. 2012) ..................................... 6

*Russo v. White*, 241 Va. 23 (1991) ................................................................................. 20

*Ruth v. Fletcher*, 237 Va. 366 (1989) ...................................................................... 19, 20

*Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604 (1987) ............................................. 23

*Salim v. Dahlberg*, 170 F.Supp.3d 897 (E.D. Va. 2016) ................................................ 9

*Shelley v. Kraemer*, 334 U.S. 1 (1948) ........................................................................... 8

*Sines v. Kessler*, 324 F.Supp.3d 765 (W.D. Va. 2018) ................................................. 11

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ............................................................... 10

*Students for Just. in Palestine at Univ. of Fla. v. Rodrigues*, No. 1:23-CV-275, 2024 WL 3045938 (N.D. Fla. Jan. 31, 2024) ................................................................................................... 5

*Sturman v. Johnson*, 209 Va. 227 (1968) ..................................................................... 19

*Tappe v. Alliance Capital Mgmt., L.P.*, 177 F.Supp.2d 176 (S.D.N.Y. 2001) ................ 8

*Texas v. Johnson*, 491 U.S. 397 (1989) .......................................................................... 9

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969) .............................. 9

*Trimyer v. Norfolk Tallow Co.*, 192 Va. 776 (1951) ..................................................... 17

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) ........................................ 23

*Virginia v. Black*, 538 U.S. 343 (2003) .......................................................................... 9

*Wesley v. Palace Rehabilitation & Care Ctr., L.L.C.*, 3 F.Supp.3d 221 (D.N.J. 2014) .......... 23

*Womack v. Eldridge*, 215 Va. 338 (1974) ..................................................................... 20

## STATUTES

42 U.S.C. § 1988 ........................................................................................................... 24

42. U.S.C. § 1981 ............................................................................................... 22, 24, 24

Virginia Code § 8.01-42.1 ...................................................................................... 13, 14, 15

## OTHER AUTHORITIES

S. Rep. No. 101-315 (1990) ............................................................................................ 23

## PRELIMINARY STATEMENT

Nationwide, university organizations that advocate for Palestinian rights and criticize Israel are targeted simply for their political expression. In this case, Defendants Students for Justice in Palestine at UVA ("SJP") and Faculty for Justice in Palestine at UVA ("FJP") face similar retaliation. Courts have addressed numerous attempts to stifle these organizations' constitutionally protected speech. *See Awad v. Fordham Univ.*, 139 N.Y.S.3d 154 (N.Y.A.D. 1 Dept. 2020) (University President denied students' request to organize an SJP chapter despite proper approval by the student government); *see also Students for Just. in Palestine at Univ. of Fla. v. Rodrigues*, No. 1:23-CV-275, 2024 WL 3045938 (N.D. Fla. Jan. 31, 2024) (University officials intended to deactivate [an SJP chapter]). This case is in pursuit of, or at least consistent with, this nationwide campaign to stifle these organizations' advocacy for Palestine.

Despite this attempt, Plaintiff's Complaint is riddled with vague, superficial allegations. Plaintiff fails to plead any facts entitling him to relief, and he fails to substantiate his empty claims that he suffers from severe injuries entitling him to relief. Plaintiff acknowledges and excuses his failure to offer such facts by citing his own "privacy concerns." Compl. ¶¶ 245-46. Moreover, he fails to offer specific facts or explanations as to how Defendants' conduct caused the injuries he claims to suffer. Ultimately, it is not this Court's obligation to comb through these vague and irrelevant allegations to decipher precisely what is at issue. *See Ice Cube Bldg., LLC v. Scottsdale Ins. Co.*, No. 3:17-CV-00973 (KAD), 2019 WL 4643609, at *3 n.1 (D. Conn. Apr. 8, 2019).  Nor should the Court be tasked with making causal connections between Defendants' conduct and Plaintiff's alleged injuries that are so glaringly absent from the Complaint. *See ACA Fin. Guaranty Corp. v. City of Buena Vista, Va.*, 298 F.Supp.3d 834, 855 (W.D. Va. 2018) ("it is not [the] court's responsibility to construct the parties' arguments . . . or a legal theory on a plaintiff's behalf") (cleaned up).

Abundantly present in the Complaint, however, is Plaintiff's intention to misuse this Court's authority to retaliate against Defendants' political expression simply because he disagrees with it. The Complaint rests on the incorrect assertion that Defendants' criticism of Israel equates to antisemitism. While this is as illogical as claiming that criticism of Saudi Arabia equates to Islamophobia, it is also an ineffective attempt to circumvent Defendants' free speech rights. Political critiques and opinions on matters of public concern are afforded strong protection by the First Amendment. Plaintiff's claims that Defendants SJP and FJP are essentially Hamas and are inherently antisemitic simply for being established are lackluster at best and discriminatory at worst. Plaintiff's Complaint is motivated by his personal qualms and discomfort with Defendants' politics, and he offers no facts suggesting that Defendants' speech falls under an exception to constitutional protections. It is unequivocal that courts cannot restrict one's speech rights merely because of another's discomfort with that speech. Yet that is what Plaintiff asks of this Court.

In light of Plaintiff's failure to plead facts entitling him to relief, lack of a cognizable injury, and inability to demonstrate how Defendants' conduct caused his alleged injuries, Defendants SJP and FJP respectfully ask this Court to dismiss all of Plaintiff's claims.

## LEGAL ARGUMENT

To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient facts to state a claim for relief that is "plausible on its face." *Robertson v. Sea Pines Real Estate Co.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). While a court must accept a plaintiff's factual allegations as true, this principle does not apply to legal conclusions. *Iqbal* at 678. Therefore, claims "supported by

mere conclusory statements" that are nonetheless offered as factual allegations are insufficient to state a claim upon which relief can be granted. *Id* (citing *Twombly* at 555).

I.   **Plaintiff's claims against Defendants SJP and FJP should be dismissed because Defendants' speech is protected under the First Amendment.**

Defendant SJP and FJP's political expression is protected under the First Amendment. The expression on political and public issues "has always rested on the highest rung of the hierarchy of First Amendment values." *Carey v. Brown*, 447 U.S. 445, 467 (1980). Further, the Supreme Court has unequivocally held that "debate on public issues should be uninhibited, robust, and wide open." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). Thus, Plaintiff's attempts to label Defendant SJP and FJP's political stances as hateful or antisemitic simply because he disagrees with Defendants' politics are insufficient grounds on which to bring these claims.

The basis of Plaintiff's Complaint is that it is allegedly antisemitic for Defendant SJP and FJP to advocate for Palestinian rights and criticize Israel for infringing on those rights. Throughout the Complaint, Plaintiff criticizes Defendants' politics, including the fact that FJP "supports, amplifies, and protects the work of SJP … and other pro-Palestinian students" at UVA. Compl. ¶ 54. Plaintiff alleges that "the very existence" of Defendants SJP and FJP is antisemitic because their mission is to "come together as a community of scholars, activists, and university staff … to demand the liberation of the Palestinian people." *Id*. at ¶¶ 42, 54. Plaintiff attempts to erroneously equate critiques of Israel with anti-Jewish hate to stifle political speech with which he disagrees. Further, despite lodging discrimination and tort claims against Defendants, Plaintiff fails to offer examples of statements—hateful or not—made by individual SJP and FJP members (let alone statements of the actual named Defendants, SJP and FJP) that were specifically directed at Plaintiff.

Through his superficial accusations, Plaintiff makes clear that his primary frustration is not with Defendants' alleged anti-Jewish speech, for which he provides no specific examples. Rather, Plaintiff

7

clearly takes issue with SJP and FJP's criticisms of Israel and advocacy for Palestinian human rights. For example, Plaintiff criticizes and attempts to delegitimize the U.S. Campaign for the Academic and Cultural Boycott of Israel and the Boycott, Divestment and Sanctions ("BDS") movement, which are movements that boycott Israeli businesses and institutions in protest of the Israeli government's discriminatory treatment of Palestinians, by outlandishly claiming that they are "Hamas-National SJP proxies."[1] *Id*. at ¶¶ 55, 118. Plaintiff even attempts to claim that students writing "FREE PALESTINE" made him feel "unsafe." *Id*. at ¶ 156-57. Plaintiff's discomfort with Defendant SJP and FJP's criticisms of Israeli policy and support for Palestinian human rights is an exceptionally insufficient basis on which to punish Defendants for exercising their First Amendment rights.

By bringing these claims, Plaintiff asks this Court to silence speech critical of Israel which Plaintiff merely finds upsetting. This, the Court cannot do. *Sullivan*, 376 U.S. at 265 ("Alabama courts … applied a state rule of law which petitioners claim to impose invalid restrictions on their constitutional freedoms of speech and press"); *Shelley v. Kraemer*, 334 U.S. 1, 17-18 (1948) (reviewing circumstances in which court orders in civil disputes are "state action of the sort prohibited by the Amendment's guarantees of freedom of discussion"); *Perry v. Schwarzenegger*, 591 F.3d 1126, 1139 (9th Cir. 2010) (court enforcement of subpoena would violate the First Amendment); *Tappe v. Alliance Capital Mgmt., L.P.*, 177 F.Supp.2d 176, 182 (S.D.N.Y. 2001) ("Thus, the Court, in interpreting the statute, becomes the 'government actor'").

Additionally, Plaintiff's alleged distress from Defendants' speech does not give rise to a discrimination or tort claim, or any other cause of action. The Supreme Court has repeatedly held in the

---

[1] The US Campaign for the Academic and Cultural Boycott of Israel ("USACBI") is a "U.S. campaign focused on a boycott of Israeli academic and cultural institutions." *US Campaign for the Academic and Cultural Boycott of Israel* (last visited June 26, 2024 at 9:13 PM), https://usacbi.org/. Boycott, Divestment, Sanctions ("BDS") is a "Palestinian-led, global movement for freedom, justice and equality" that uses economic boycotts to "pressure Israel to comply with international law" and was "[i]nspired by the South African anti-apartheid movement." *FAQs (What is the boycott, divestment and sanctions (BDS) movement?)*, BDS (last visited on June 26, 2024 at 9:17 PM), https://bdsmovement.net/faqs#collapse16231.

university context that "a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint" is no justification to prohibit political speech. *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 509 (1969); *see also Texas v. Johnson*, 491 U.S. 397, 414 (1989) ("If there is a bedrock principle underlying the First Amendment it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable"). Further, grant by this Court of the relief Plaintiff requests would itself be an act of discrimination against the content of Defendants' pro-Palestine speech. *Police Dep't of City of Chi. v. Mosley*, 408 U.S. 92, 95 (1972) ("[T]he First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content"); *see also Koontz v. Watson*, 283 F.Supp.3d 1007, 1022 (D. Kan. 2018) (a state law's "goal is to undermine the message of those participating in a boycott of Israel. This is either viewpoint discrimination against the opinion that Israel mistreats Palestinians or subject matter discrimination on the topic of Israel. Both are impermissible goals under the First Amendment").

Meanwhile, statements that fall outside First Amendment protection are those that are true threats. *Virginia v. Black*, 538 U.S. 343, 359 (2003). True threats include "statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence toward a particular individual." *Id*. For example, in *Salim v. Dahlberg*, the district court found that Dahlberg made true threats when, during his anti-Arab and anti-Muslim rant, he stated that if Salim did not "denounce those f…ing assholes that flew jets into the World Trade Center," Dahlberg would "slice [Salim's] f…ing throat right now." *Salim v. Dahlberg*, 170 F.Supp.3d 897, 900 (E.D. Va. 2016). The jury found that these statements were "intentionally threatening as well as intimidating" and were therefore not protected by the First Amendment. *Id*.

9

Here, Plaintiff fails to offer facts demonstrating that Defendants made "true threats" toward Plaintiff that would shed their constitutional protections. Plaintiff alleges that, at a political demonstration on campus, Plaintiff "was berated, insulted, [and] threatened with violence." Compl. ¶ 111. He further alleges that "pro-Hamas actors … have published horribly offensive slurs and threats." *Id*. at ¶ 142. He later states, "Jewish students (including the Plaintiff) have been … threatened with physical violence." *Id*. at ¶ 146. Despite these allegations, not once does Plaintiff allege or plead facts suggesting that Defendants—or any particular individual, affiliated or unaffiliated with Defendants—expressed such "threats." Instead, Plaintiff makes generalized claims about an alleged climate of antisemitism on campus and attempts to legitimize this superficial accusation using unsubstantiated claims that he experienced threats and assaults from anonymous, unnamed individuals which, according to his Complaint, do not include Defendants. Therefore, it is implausible that Defendants made true threats against Plaintiff warranting a disposal of their speech rights.

In the absence of such threats and in light Plaintiff's mere disagreement with Defendants' political expression, which is unequivocally protected by the First Amendment, all of Plaintiff's claims fail and should be dismissed.

## II.    Plaintiff lacks standing to bring his claims because he lacks concrete and particularized injuries.

Plaintiff's claims should be dismissed for lack of standing under F.R.C.P. 12(b)(1). To have standing to assert a claim, a plaintiff must show that (1) the plaintiff suffered an injury that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," (2) defendant's alleged conduct caused the plaintiff's injury, and that (3) a likelihood that the requested relief will redress the alleged injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).

10

### A. Plaintiff's alleged injuries are too abstract and unsubstantiated to possess the requisite degrees of concreteness and particularity.

First, Plaintiff lacks a concrete and particularized injury, otherwise known as an injury-in-fact. At the pleading stage, it is sufficient for a plaintiff to provide "general factual allegations of injury resulting from the defendant's conduct" since, on a motion to dismiss, courts "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Defenders of Wildlife,* 504 U.S. at 561 (quoting *Lujan v. National Wildlife Federation*, 487 U.S. 871, 889 (1990)). For an injury to be "particularized," it must "affect the plaintiff in a personal and individual way" and for an injury to be "concrete," it must be "real" and not "abstract." *Spokeo,* 578 U.S. at 340 (quoting *Defenders of Wildlife,* 504 U.S. at 560). For example, in *Parents Involved in Community Schools v. Seattle School District No. 1,* the Supreme Court found that Parents Involved suffered a concrete injury after the school district relied on students' race as a "tiebreaker" to determine which schools certain children could attend, and the plaintiff group's members had children who may be denied admission to the high schools of their choice because of their race. *Parents Involved in Cmty Schools v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 702 (2007). Additionally, in *Sines v. Kessler*, the plaintiffs were ten Charlottesville residents who were found to have suffered physical, emotional, and psychological injuries during a series of white supremacist rallies. *Sines v. Kessler*, 324 F.Supp.3d 765, 800 (W.D. Va. 2018). Marchers harassed the plaintiffs, assaulted them with torches and pepper spray and other liquids, hit them with a car resulting in broken bones, and caused them to suffer from diagnosable emotional disorders, including acute stress disorder and trauma. *Id*. at 774-75.

Here, Plaintiff fails to offer facts demonstrating that he suffered a concrete and particularized injury at the hands of Defendants. Plaintiff alleges that he "suffered mental anguish, severe emotional distress, paralyzing anxiety, constant oppressive fear, depression, feelings of worthlessness, humiliation, embarrassment, and a constant sense of dread and impending doom." Compl. ¶ 246. More generally,

11

Plaintiff states that he suffers from "physical, emotional, mental, psychological, economic, and financial" injuries. *Id*. at ¶ 250. Superficially alleging that he suffered from injuries such as depression or anxiety without providing facts to support these allegations lack sufficient concreteness and particularly to constitute an injury-in-fact. It is not enough for Plaintiff to offer a list of general ailments and injuries without providing supporting facts or examples that he does, in fact, suffer from such alleged injuries. Plaintiff even acknowledges this lack of particularly where he states, "[p]rivacy concerns limit the detail with which the Plaintiff feels comfortable detailing the extent of his mental, emotional, and psychological damages." *Id*. at ¶ 246. Attempting to compensate for this lack of particularity by stating "but those injuries are real" is insufficient. *Id*. In sum, Plaintiff fails to plead facts demonstrating that he suffered an injury-in-fact sufficient to grant him standing.

### B. Plaintiff fails to demonstrate that Defendants SJP and FJP's conduct caused his alleged injuries.

Second, for a plaintiff to have standing to bring a claim, they must show that there is a "fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." *Defenders of Wildlife,* 504 U.S. at 560. Here, Plaintiff claims that, while attending a pro-Palestine demonstration as a counter-protestor, he was "berated, insulted, threatened with violence, and physically assaulted." Compl. ¶ 111. However, Plaintiff fails to allege that Defendant SJP or FJP engaged in such conduct, or even that members of Defendants SJP and FJP were the individuals who allegedly engaged in this conduct.[2] Merely alleging that SJP and FJP organized the demonstration he attended is insufficient to show that the individuals who allegedly harassed Plaintiff were members of SJP and FJP. *See Id*. at ¶ 107.

---

[2]    Indeed, throughout Plaintiff's complaint, Plaintiff appears to assume that Defendants (SJP and FJP) are strictly and vicariously liable for every action or statement of "members" of said organization. But even if individuals who are in some way, shape, or form affiliated with Defendants engaged in some form of misconduct (e.g., someone who "liked" a post on Instagram, someone who attended a rally), it does not follow that *Defendants* would be legally responsible for their conduct.

Plaintiff even states that "other student and faculty groups" besides FJP and SJP attended the October 25 demonstration. *Id*. Therefore, individuals who are not members of SJP or FJP could have engaged in the alleged conduct.

Throughout his Complaint, Plaintiff alleges other instances in which anonymous individuals allegedly made discriminatory statements toward him. For example, Plaintiff states, "Plaintiff has been threatened, physically assaulted, and called file names and slurs on multiple occasions." *Id*. at ¶ 228. Yet Plaintiff once again fails to allege that Defendants—or even individuals who in some way, shape, or form might affiliate themselves with the Defendants—were the authors of such statements. Accordingly, Plaintiff's failure to allege that Defendants SJP and FJP engaged in the alleged conduct means that Plaintiff fails to demonstrate that Defendants' alleged conduct caused his alleged injuries. Absent a showing of this causal connection, Plaintiff lacks standing to bring his claims.

### C. Plaintiff fails to demonstrate a likelihood that a court ruling in his favor would remedy his alleged injuries.

For a plaintiff to demonstrate redressability, they must demonstrate a "substantial likelihood" that the relief they request will redress their injury. *Defenders of Wildlife,* 504 U.S. at 595. In other words, a plaintiff must demonstrate that potentially obtaining relief by receiving a favorable ruling is not "merely speculative." *Bennett v. Spear*, 520 U.S. 154, 167 (1997) (citing *Defenders of Wildlife,* 504 U.S. at 560-61). Here, Plaintiff alleges that Defendants SJP and FJP violated Virginia Code § 8.01-42.1; engaged in negligence, gross negligence, and intentional infliction of emotional distress; and violated § 1981 which protects against discrimination in contractual relationships. Compl. ¶ 2(d). As stated above, Plaintiff fails to demonstrate that he suffered a concrete and particularized injury, and that Defendants' actions caused these alleged injuries. Despite this, Plaintiff seeks injunctive and declaratory relief, compensatory damages, punitive damages, attorney's fees, and interest under all his claims against Defendants SJP and FJP. *Id*.

However, a favorable ruling on his claims cannot redress his alleged injuries. If this Court were to award Plaintiff with the monetary damages he seeks, there is no substantial likelihood that a financial award could redress the harm caused by the alleged discrimination he endured. Intangible injuries such as these are unlikely to be redressed through financial remedies. For example, it is unclear how compensatory damages could redress his "endless personal suffering of a spiritual nature." *Id.* at ¶ 249. It is similarly unclear how a financial award could redress his "los[s of] the joys of his academic pursuits and the adoration of his studies." *Id.* at ¶ 247. Plaintiff even admits that some of his alleged injuries are permanent, stating that "his entire college experience will forever be tarnished, impaired, and ruined." *Id.* at ¶ 243. It is unclear how Plaintiff's requested relief, or any other relief for that matter, could remedy his permanently lost college years. Lastly, Plaintiff requests injunctive relief, yet fails to state exactly what injunctive relief he seeks. Absent such specificity, a favorable ruling and award of such relief inherently could not redress Plaintiff's alleged injuries. Plaintiff's inability to demonstrate the redressability of his claims, or any other standing requirements, means that he lacks standing to bring his claims.

### III.   Plaintiff fails to plead sufficient facts alleging that Defendants FJP and SJP violated § 8.01-42.1 because he fails to demonstrate that Defendants acted with religious animosity or that the Defendants, themselves, engaged in the alleged conduct.

Plaintiff's claims should be dismissed for failure to state a claim upon which relief can be granted under F.R.C.P. 12(b)(6). Plaintiff claims that Defendants violated Virginia Code § 8.01-42.01, otherwise known as Virginia's hate crime statute. The statute allows a plaintiff to recover damages if they can show that the defendant subjected them to intimidation, harassment, or violence that is motivated by racial, religious, or ethnic animosity. Va. Code Ann. § 8.01-42.1(A).There are no reported cases, in either Virginia or federal courts, holding that conduct remotely akin to the conduct alleged here would suffice to state a claim under the statute. To be sure, federal courts have found a violation where defendants "used racial slurs and physically attacked [the plaintiffs] because of their race." *Sines*, 324 F.Supp.3d at 800

(quoting *Frazier v. Cooke*, No. 4:17-CV-54, 2017 WL 5560864, at * 7 (E.D. Va. Nov. 17, 2017)). In *Berry v. Target*, the Fourth Circuit found a violation where the defendant "harassed plaintiff based on racial animus because he apprehended her, used a racial slur, and later implied that African-Americans came into [the store] to steal." *Berry v. Target Corp.*, 214 F.Supp.3d 530, 535 (E.D. Va. 2016). Similarly, in *Johnson v. Hugo's Skateway*, the Fourth Circuit found a violation when workers at a skating rink singled the plaintiff out because of his race and called the police on him. *Johnson v. Hugo's Skateway*, 949 F.2d 1338, 1341-42 (4th Cir. 1991). Plaintiff does not allege that Defendants engaged in any such action here.

Ultimately, a plaintiff must plead facts demonstrating that statements were "directed against his person" as required by the statute. Va. Code Ann. § 8.01-42.1(A); *Sines,* 324 F.Supp.3d at 800. A plaintiff should also plead facts demonstrating that it was members of the defendant organization, rather than non-members, who were making the allegedly discriminatory statements. *Id.*. For example, in *Sines v. Kessler*, a plaintiff suing under the statute failed to plead facts demonstrating that the "specific Defendants were the ones throwing fuel and torches" and that "this conduct was directed at [the plaintiff]." *Id.* As such, this Court dismissed plaintiff's claims against those defendants. Here, Plaintiff alleges that Defendants' conduct at an October 25, 2023 rally amounted to a violation of the statute. Plaintiff states that, when he attended the October 25 march, he was "berated, insulted, threatened with violence, and physically assaulted." Compl. ¶ 110. Yet Plaintiff fails to plead facts that entitle him to relief under the statute.

First, Plaintiff fails to plead facts demonstrating that the entity who allegedly threatened and assaulted him was the Defendants, or even members of Defendants SJP and FJP. In fact, Plaintiff fails to allege that any individual in particular engaged in such conduct. Merely alleging that SJP and FJP organized an event is insufficient to suggest that the individuals who allegedly harassed Plaintiff at that event were also members of SJP and FJP (or that, if true, SJP and FJP would be strictly and vicariously liable for every self-identified member's misconduct). Plaintiff even acknowledges that "other student and

15

faculty groups" besides FJP and SJP attended the October 25 demonstration. *Id.* at ¶ 107. Therefore, it is plausible that individuals who are not members of SJP or FJP engaged in the alleged harassment he experienced. Additionally, while Plaintiff gives examples of other occasions in which anonymous speakers allegedly made discriminatory statements toward him, Plaintiff once again fails to allege that Defendants, themselves, made such statements. *See Id.* at ¶ 228 ("Plaintiff has been threatened, physically assaulted, and called vile names and slurs on multiple occasions"). Absent any facts demonstrating that SJP and FJP harassed Plaintiff, these claims against those entities should be dismissed.

Second, Plaintiff fails to sufficiently plead facts demonstrating that Defendants SJP or FJP made statements that were motivated by religious animosity. While Plaintiff alleges that he was called a "[f]ilthy Jew," he does not allege that a member of either SJP or FJP made that statement, and he certainly does not allege that Defendants SJP or FJP themselves made the statement. *Id.* at ¶ 228. Instead, Plaintiff repeatedly and without merit calls Defendants "antisemitic," yet fails to plead specific facts demonstrating either organization (or even persons affiliated with those organizations) made *any* statements—antisemitic or otherwise—to Plaintiff.[3] Once again, superficial statements that are merely conclusory cannot withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. Yet here, Plaintiff claims that SJP's alleged conduct was "intended to discriminate, and intended to create a hostile environment towards and against [Plaintiff]." Compl. ¶ 113. Plaintiff attempts to further assert that "SJP at UVA's actions towards and against [Plaintiff] were motivated by racial, religious, ethnic, national origin, and shared ancestry animus and would not have occurred 'but for' those protected characteristics." *Id.* at ¶ 114. However, once again

---

[3]    And the Complaint gives substantial reason to believe that when Plaintiff uses the word "antisemitic," he means "critical of Israel." Defendants vehemently deny that they engaged in violence, intimidation, or harassment of Plaintiff on the basis of political viewpoint, but to the extent Plaintiff alleges as much, such misconduct is not actionable under the statute.

Plaintiff fails to plead specific facts to plausibly allege that Defendants FJP or SJP directed religious animosity toward Plaintiff, himself, as required for a violation of the statute.

Ultimately, Plaintiff merely attempts to assert that SJP and FJP are inherently antisemitic—and therefore in violation of the statute—simply for their organizations' broader criticisms of Israel and support for Palestinian human rights. *See Id.* at ¶¶ 42, 45. Plaintiff offers ample evidence of SJP and FJP's critiques and disagreements with Israeli policy. Political expression like this, including political demonstrations like the one allegedly held on October 25, is unquestionably protected under the First Amendment. Yet, by making unsubstantiated claims that Defendants violated Virginia's hate crime statute simply for their critiques of Israel, Plaintiff attempts to equate rhetoric critical of Israel with antisemitism with the goal of retaliating against speech he simply disagrees with. Despite this attempt, Plaintiff fails to plead facts demonstrating that SJP and FJP (or even any of its members) made anti-Jewish statements and that these anti-Jewish statements were directed at Plaintiff.

## IV. Plaintiff fails to plead facts sufficient to state a negligence claim that is plausible on its face.

Virginia courts define negligence as a failure to use a degree of care that an ordinarily prudent person would use under the circumstances. *Gossett v. Jackson*, 249 Va. 549, 554 (1995); *Griffin v. Shively*, 227 Va. 317, 321 (1984). To successfully prove that a defendant acted negligently, a plaintiff must show that (1) the defendant owed a legal duty to the plaintiff, (2) the defendant breached that duty, (3) the defendant's conduct was a proximate cause of the plaintiff's injury, and (4) the breach resulted in damages. *Blue Ridge Serv. of Va. v. Saxon Shoes, Inc.*, 271 Va. 206, 218 (2006) (citing *Trimyer v. Norfolk Tallow Co.*, 192 Va. 776, 780 (1951)). The proximate cause of an injury is an act that, without any intervening events, produced the injury and was a but-for cause of the injury. *Id* (citing *Beale v. Jones*, 210 Va. 519, 522 (1970)). Further, the evidence showing this causal connection must lead to a "legitimate inference"

rather than "mere conjecture" that the defendant's conduct caused the injury. *Id* (citing *Beale,* 210 Va. at 522).

Plaintiff fails to plead facts to plausibly allege that Defendants were negligent. First, Plaintiff fails to offer facts demonstrating how Defendants owe Plaintiff a duty of care. Plaintiff merely offers a bare recital of the state tort elements, alleging "Defendants FJP at UVA and SJP at UVA owed the Plaintiff and other students and faculty at the University of Virginia certain duties of care" without further explanation. Compl. ¶ 307. Second, Plaintiff also fails to allege how Defendants SJP and FJP breached their alleged duty to Plaintiff. Plaintiff simply alleges, "Defendants FJP at UVA and SJP at UVA … breached the applicable duties and standards of care and were repeatedly negligent," again without further explanation *Id*. at ¶ 308. He even attempts to allege that the "very existence of FJP at UVA … [is] as a matter of law, a breach of each faculty member's legal duties." *Id*. at ¶ 42. Once again, superficial statements that are merely conclusory cannot withstand a motion to dismiss. *Iqbal*, 556 U.S. 662 at 678 (citing *Twombly*, 550 U.S. 544 at 555).

Third, Plaintiff fails to plead facts demonstrating how Defendant SJP and FJP's conduct was a proximate cause of his alleged injuries. Plaintiff offers no facts demonstrating the causal connection between Defendants' alleged conduct and Plaintiff's purported injuries. Plaintiff only superficially states, "Plaintiff has suffered damages as a direct, proximate, and foreseeable result of the acts, errors, omissions, and breaches of duty by the Defendants" without offering further facts showing a causal connection between Defendants' conduct and Plaintiff's damages. Compl. ¶ 224. Plaintiff even alleges that a number of individuals—including Defendants SJP and FJP, Defendant University President James Ryan, Defendant Rector Robert Hardie, and "other student and faculty groups"—contributed to creating an allegedly antisemitic campus climate. *Id*. at ¶¶ 107, 229, 236. As such, Plaintiff fails to explain how conduct specifically by Defendants SJP and FJP caused the injuries Plaintiff alleges.

Fourth, Plaintiff fails to sufficiently plead facts to support his claim that he suffered damages. Plaintiff only superficially alleges that he suffered from "economic and financial damages," yet again without further explanation. *Id*. at ¶ 248. Plaintiff alleges that he suffers mainly psychological or emotional damages from Defendants' alleged conduct, including "embarrassment," "heartache," and "deep disappointment." *Id*. at ¶¶ 242, 246. However, such alleged suffering does not create a plausible claim for damages. Plaintiff goes on to state that he suffers from "severe emotional distress," "depression," and "paralyzing anxiety," yet fails to offer further facts supporting these claims. Once again, superficial claims like these cannot survive a motion to dismiss.

Through these superficial allegations, Plaintiff makes clear that he brings a negligence claim against Defendants simply because he dislikes their political stance on Israel. The Supreme Court of Virginia stated in *Ruth v. Fletcher* that "[i]f everyone was allowed damages for injuries to his feelings caused by someone else, the chief business of mankind might be fighting each other in the courts." *Ruth v. Fletcher*, 237 Va. 366, 372-73 (1989). Here, Plaintiff's injured feelings are insufficient grounds on which to bring a claim of negligence and, as such, this claim should be dismissed.

## V. Plaintiff fails to sufficiently plead facts to plausibly allege that Defendants engaged in gross negligence.

Virginia courts define gross negligence as negligence that shows an utter disregard of prudence that amounts to a complete neglect of another's safety and that would shock a fair-minded person. *Cowan v. Hospice Support Care, Inc.*, 268 Va. 482, 487 (2004) (citing *Koffman v. Garnett*, 265 Va. 12, 15 (2003)). If a defendant is found to have engaged in grossly negligent conduct, such behavior is accordingly ordinarily negligent. *Sturman v. Johnson*, 209 Va. 227, 235 (1968).

First, Plaintiff once again fails to specify what alleged conduct on the part of Defendants SJP and FJP constitutes grossly negligent conduct. Here, once again, Plaintiff simply alleges, "Defendants FJP at UVA and SJP at UVA's behavior and breaches constitute gross negligence" Compl. ¶ 311. However,

similar to Plaintiff's negligence claim, Plaintiff fails to offer any facts demonstrating the plausibility of his claims. In lieu of offering facts to plead his claim, Plaintiff instead regurgitates the general standard for gross negligence. It is not this Court's obligation, nor Defendants', to "fashion arguments for a party or to further develop a party's argument when it is wholly conclusory [and] unexplained." *Clayton v. Nationwide Mut. Ins. Co.*, 260 F.Supp.3d 514, 521 (D.S.C. 2017); *see also City of Buena Vista*, 298 F.Supp.3d at 855 (the court reiterated that it is not the court's responsibility to construct parties' arguments or a legal theory on a plaintiff's behalf). Such is the case here, where Plaintiff's allegations are entirely conclusory. Absent the requisite facts needed to plausibly make this claim, Plaintiff's gross negligence claim should be dismissed.

## VI. Plaintiff fails to sufficiently plead facts demonstrating that Defendants engaged in intentional infliction of emotional distress against Plaintiff and that Plaintiff suffered emotional distress to a degree entitling him to relief.

To prove that a defendant's conduct constitutes intentional infliction of emotional distress, a plaintiff must prove: (1) the defendant's conduct was intentional or reckless, (2) the conduct was outrageous, (3) there was a causal connection between the defendant's conduct and the plaintiff's resulting emotional distress, and (4) the plaintiff's emotional distress was severe. *Almy v. Grisham*, 273 Va. 68, 77 (2007) (citing *Womack v. Eldridge*, 215 Va. 338 (1974)). To determine whether the defendant's conduct is outrageous, the Virginia Supreme Court determines whether "reasonable persons could view the conduct alleged, if proved, as being 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Almy* at 78 (citing *Russo v. White*, 241 Va. 23, 27 (1991)); *see also Ruth*, 237 Va. at 368.

Facts that support a finding of the plaintiff's severe emotional distress include whether the plaintiff's emotional condition was "debilitating"; the plaintiff suffered from "depression, nervousness, and an inability to sleep"; the plaintiff experienced in a "complete disintegration of virtually every aspect

of [a plaintiff's] life"; the plaintiff had to undergo "extensive therapy"; or the plaintiff otherwise "suffered from severe psychological trauma, depression, humiliation, and injury to reputation." *Almy,* 273 Va. at 79-80. In other words, a plaintiff suffers from severe emotional distress where the distress is "so severe that no reasonable person could be expected to endure it." *Id*. at 80. Ultimately, however, the tort of intentional infliction of emotional distress is disfavored by Virginia courts because courts and parties lack clear guidance on how to evaluate such claim. *Id*. at 81; *Russo,* 241 Va. at 26.

First, Plaintiff yet again fails to specify which alleged conduct Defendants SJP and FJP allegedly engaged in that constitutes outrageous conduct. Plaintiff only superficially and without substantiating facts states, "Defendants FJP at UVA and SJP at UVA's behavior and breaches were outrageous and intolerable" and Defendants engaged in "heinous misconduct," without providing further explanation. Compl. ¶ 313. As with his other claims, Plaintiff fails to plead specific facts that would make his claims plausible. Plaintiff also alleges, again without merit, that "Defendants FJP at UVA and SJP at UVA's behavior and breaches were specifically intended to … cause the Plaintiff severe emotional … harm." *Id*. at ¶ 313. Once again, Plaintiff fails to offer substantiating facts that would make such a claim plausible.

Second, Plaintiff fails to allege any facts supporting his allegations that he suffered from severe emotional distress. Plaintiff only superficially alleges, "Defendants FJP at UVA and SJP at UVA … intentionally inflicted severe emotional distress upon the Plaintiff." *Id*. at ¶ 313. He continues, "Plaintiff has suffered substantial, severe, and permanent physical and psychological damages as well as financial and economic losses as proximate, direct, and foreseeable result of Defendants FJP at UVA and SJP at UVA's negligence, gross negligence, and intentional infliction of emotional distress." *Id*. at ¶ 314. Plaintiff claims that the events on October 25 "deeply scarred [Plaintiff] and have had lasting negative effects upon him and his experience at The University of Virginia." *Id*. at ¶ 112. Yet Plaintiff fails to offer facts describing the degree of severity of his emotional distress. Plaintiff's allegations that he merely "feel[s]

21

unwelcome and unsafe" or "feel[s] uneasy" because of pro-Palestine students' encampment, for example, is far from the degree of severity for which Virginia courts might rule in the plaintiff's favor. *Id*. at ¶ 157; *see Almy,* 273 Va. at 79-80 ("[plaintiff's] emotional distress reached such a level of severity that '[e]very aspect of [her] life [was] fundamentally and severely altered,' such that she 'had trouble even walking out of the front door'").

Some of Plaintiff's other allegations are both insufficient and absurd. Plaintiff asserts, for example, that "faculty groups at the University of Virginia" wear masks as a "tactic … to create an atmosphere of intimidation." Compl. ¶ 105. Plaintiff even alleges that wearing a mask is "a criminal act." *Id*. at ¶ 106. As other federal courts have noted, in the time of COVID-19, wearing a mask in public can no longer be assumed to communicate any message other than a concern for one's own health and that of others. *Falcone v. Dickstein*, 92 F.4th 193, 212 (9th Cir. 2024) (an individual's decision to wear or not wear a mask is "not usually imbued with symbolic meaning," so others would not know that an individual wearing or not wearing a mask is an "inten[tion] to express" a political viewpoint). Even if wearing a mask, which is unequivocally a lawful act, was intimidating, Plaintiff once again fails to offer facts demonstrating how wearing a mask, and specifically Defendants' decision to wear masks, could cause emotional distress so severe as to make his claims plausible.

## VII.    Plaintiff fails to sufficiently plead facts entitling him to relief under §§ 1981 and 1988 because Plaintiff lacks rights in a contractual employment or independent contractor relationship with Defendants.

### A.  Plaintiff fails to plead facts entitling him to relief under § 1981.

Section 1981 of the Civil Rights Act of 1866 prohibits discrimination on the basis of race in the making and enforcing of employment or independent contractor contracts. 42. U.S.C. § 1981. Since the statute specifically references "white citizens," courts have interpreted it to apply to race discrimination, not national origin discrimination. *Wesley v. Palace Rehabilitation & Care Ctr., L.L.C.*, 3 F.Supp.3d 221,

233 (D.N.J. 2014) (court affirms other federal courts' rulings that national origin is not a protected characteristic under § 1981) (citing 42 U.S.C. § 1981(a)); *see also Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 607 (1987) (the statute "did not cover" claims "asserting only discrimination on the basis of national origin and religion"). The conduct applicable to § 1981 include "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). The legislature's goal of the statute is to "'ensure that Americans may not be harassed, fired or otherwise discriminated against in contracts because of their race.'" *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 450 (2008) (quoting S. Rep. No. 101-315, at 6 (1990)).

The Supreme Court has held that, first, a plaintiff bringing under § 1981 "must initially identify an impaired 'contractual relationship' … under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). A plaintiff cannot state a § 1981 claim unless they have, or would have, rights under an existing or proposed contract that they wish "to make and enforce." *Id*. at 479-80. Second, a plaintiff must demonstrate that plaintiff's race was a but-for cause of their injury, and that burden remains a constant over the life of the lawsuit. *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 327 (2020); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 347 (2013). In other words, a plaintiff "must identify injuries flowing from a racially motivated breach of their own contractual relationship, not someone else's." *Domino's Pizza,* 546 U.S. at 480. Plaintiff fails to offer facts demonstrating that his claims can satisfy both requirements.

Here, Plaintiff fails to offer facts supporting his claim that he and Defendants SJP and FJP have any contractual relationship, whether employment-related or not, or that he otherwise has rights under a relevant contract. While Plaintiff may have a contractual relationship with the University, Plaintiff does not allege that he has a contractual relationship with Defendants SJP or FJP. *See* Compl. ¶¶ 273, 321.

23

Plaintiff's attempt to assert a § 1981 claim without possessing rights under a contractual relationship with Defendants SJP and FJP goes directly against the Supreme Court's analysis of the statute. The Court states:

> "[a]bsent the requirement that the plaintiff himself must have rights under the contractual relationship, § 1981 would become a strange remedial provision designed to fight racial animus in all of its noxious forms, but only if the animus and the hurt it produced were somehow connected to *somebody's* contract. We have never read the statute in this unbounded—or rather, *peculiarly* bounded—way."

*Domino's Pizza,* 546 U.S. at 476. Here, Plaintiff, lacking the relevant contractual rights, attempts to use this statute in the unbounded and peculiarly bounded ways that the courts seek to prevent.

Assuming, *arguendo,* that a "hostile educational environment" claim is cognizable under 42 U.S.C. § 1981 within the Fourth Circuit, and assuming, *arguendo*, that Plaintiff has sufficiently alleged that he has been denied the same right "as is enjoyed by white citizens" to make and enforce his contract with the University, *see* 42 U.S.C. §1981, it does not follow that a claim under Section 1981 may be brought against a third-party whose conduct (allegedly) interfered with the Plaintiff's freedom. That would be true in any case, but it is particularly true here where the misconduct alleged to have been committed by Defendants SJP and FJP consists chiefly of core First Amendment activity.

In sum, Plaintiff lacks the relevant contractual rights required to bring a claim under the statute and fails to offer facts demonstrating that Defendants subjected him to racial or ethnic animus. Therefore, Plaintiff's § 1981 claim should be dismissed.

**B.  Plaintiff fails to plead facts entitling him to attorney's fees under § 1988.**

Section 1988, otherwise known as the Civil Rights Attorney's Fees Act of 1976, allows a party who prevails on a § 1981 claim to recover reasonable attorney's fees from the losing party. 42 U.S.C. § 1988. However, per Defendants' argument above, Plaintiff should not prevail on his § 1981 claim because

24

he lacks the requisite contractual rights required to succeed under the statute. Therefore, Plaintiff cannot collect attorney's fees under § 1988.

## CONCLUSION

Plaintiff's claims against Defendants SJP and FJP should be dismissed in their entirety, not only because Defendants' political expression is protected by the First Amendment, but because Plaintiff fails to plead facts demonstrating that he suffers a particularized injury and that Defendants' conduct caused his alleged injuries. Therefore, Plaintiff is not entitled to an entry of a Declaratory Judgment in his favor, permanent injunctive relief, an award of compensatory damages, attorneys' fees, nor pre- or post-judgment litigation costs. Defendants SJP and FJP respectfully ask this Court to dismiss all of Plaintiff's claims with prejudice.

Dated:    July 1, 2024

Respectfully submitted,

By: _____
Kelly Orians (VSB 98047)
580 Massie Road
Charlottesville, VA 22903
keorians@gmail.com
303-946-5375

Asim Ghafoor (MD State Bar 9906240136)
Law Office of Asim Ghafoor
23465 Rock Haven Way, Suite 100
Dulles, VA 20166
(202) 330 1469
asim@glawoffice.com
*Admitted Pro Hac Vice*

Jonathan Wallace (NY State Bar 1733757)
P.O. Box 728
Amagansett, NY 11930
917 359 6234
jonathan.wallace80@gmail.com
*Admitted Pro Hac Vice*

*Attorneys for Defendants SJP and FJP*

25

**CERTIFICATE OF SERVICE**

     I hereby certify that a true and correct copy of Defendant FJP and SJP's Motion to Dismiss and the supporting Memorandum was served by ECF on July 1, 2024 on all counsel or parties of record.

                           _____

                           Kelly Orians (VSB 98047)